# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

TIMOTHY MAHER,            )
                                     )
        Petitioner,         )
                                     )
vs.                         )        No. CIV-15-26-C
                                     )
JOE M. ALLBAUGH, Director, Oklahoma  )
     Department of Corrections,    )
                                     )
        Respondent.[1]      )
                                     )

## MEMORANDUM OPINION

Petitioner, Timothy Maher, a state court prisoner, has filed a petition for writ of habeas corpus seeking relief pursuant to 28 U.S.C. § 2254 (Dkt. No. 11).[2] Petitioner challenges the convictions entered against him in Stephens County District Court Case No. CF-2011-5. In that case, a jury found Petitioner guilty of first degree manslaughter and possession of a sawed-off shotgun.[3] Petitioner received consecutive imprisonment sentences of forty-five years and two years, respectively, and fines totaling $11,000 (O.R. 159, 161, 187-91). Petitioner appealed his convictions to the Oklahoma

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Joe M. Allbaugh, who currently serves as Director of the Oklahoma Department of Corrections, is hereby substituted as the proper party respondent.

[2] Dkt. No. 11 is Petitioner's amended petition, which he subsequently filed to cure deficiencies in his original petition. A memorandum brief is attached to the petition.

[3] Petitioner was charged with first degree murder, but the jury found him guilty of the lesser-included offense (O.R. 1-2). Petitioner was also charged with cultivation of a controlled dangerous substance (id.). Petitioner pled guilty to that charge (Tr. 8/8/12, 5-11), and he does not challenge his plea in this proceeding. Pet. at 1.

Court of Criminal Appeals (hereinafter "OCCA"). The OCCA affirmed in an unpublished opinion, <u>Maher v. State</u>, No. F-2012-597 (Okla. Crim. App. Jan. 22, 2014).[4]

Petitioner raises seven grounds for relief, all of which were presented to the OCCA in his direct appeal. Respondent has responded to the petition and Petitioner has replied (Dkt. Nos. 17 and 21). In his reply, Petitioner has requested an evidentiary hearing with respect to his Ground Three (Dkt. No. 21 at 3). For the reasons set forth herein, the Court finds that an evidentiary hearing is unnecessary and that Petitioner is not entitled to habeas relief.

## I. Facts.

On the evening of January 6, 2011, Petitioner met Maurice Wade for the first time at a bar (Tr. 4/24/12, 54; Tr. 4/26/12, 16-19; Tr. 4/27/12, 9-10). After leaving the bar around 1:30 a.m. and hanging out with one of Mr. Wade's friends until about 3 a.m., the two men went to Petitioner's house (Tr. 4/24/12, 48-55, 58-62; Tr. 4/26/12, 18; Tr. 4/27/12, 10-12). Shortly before 6 a.m. on January 7th, Petitioner shot and killed Mr. Wade in his living room. Mr. Wade was shot twenty times (Tr. 4/24/12, 7-9; Tr. 4/25/12, 178; State's Exs. 6 and 88).

Petitioner claimed that he shot Mr. Wade in self-defense. According to Petitioner, when he and Mr. Wade arrived at the house, they talked, drank beer, and got along just fine. At some point, however, Mr. Wade "began to act very strange." Petitioner did not know why Mr. Wade's behavior changed, but he started "talking crazy talk, nonsense" and

---

[4] Respondent has provided a copy of the OCCA's summary opinion. <u>See</u> Resp't's Ex. 4.

"he was just being weird" (Tr. 4/27/12, 12-14). In response, Petitioner got his pistol and placed it in his back pocket. When Petitioner told Mr. Wade to leave, Mr. Wade "jumped up over the top of [him] off the loveseat and said, 'What are you going to do if I don't?'" Petitioner then drew his pistol and told Mr. Wade to get out of his house (id. at 14-15). Mr. Wade went outside the house and onto the front porch. At this point, Mr. Wade "was enraged." He was "yelling and screaming" and "pulling his hair and throwing his hands up" (id. at 15-16). When Mr. Wade came back inside, Petitioner held the pistol on him and told him again to leave. Mr. Wade went back outside, but came back in a second time (id. at 16-17). Mr. Wade wanted his phone (id. at 17). According to Petitioner, it was then that Mr. Wade charged him, and Petitioner shot him because he was scared for himself and his family (id. at 18-20). Petitioner's wife and young daughter were home when the shooting occurred (Tr. 4/24/12, 148-52, 169).

Petitioner's wife, Ruthann Maher, witnessed some of the interaction between Petitioner and Mr. Wade. Mrs. Maher testified that it was the sound of the two men bickering that woke her up around 5:30 a.m. Although Mrs. Maher got up and was in the living room when the shooting occurred, she did not see the initial shots because she was looking for Mr. Wade's cell phone in the loveseat. Mrs. Maher did see the final shots, the last of which was fired as Mr. Wade lay on the ground. Mrs. Maher did not see Mr. Wade charge her husband (Tr. 4/24/12, 152-70).

After the shooting, Petitioner, Mrs. Maher, and their daughter went to a neighbor's house to call the police (Tr. 4/24/12, 171). According to Mrs. Maher, on the way to the neighbor's house, Petitioner stopped and went into one of two sheds they had on their

property (id. at 171-74). Inside that shed, police later found a sawed-off shotgun, along with marijuana and drug paraphernalia (id. at 68-74, 80-82; State's Exs. 77-80). This was in addition to the two marijuana plants and numerous guns police found inside the house (Tr. 4/23/12, 190-91; Tr. 4/26/12, 52, 58, 59-64; State's Exs. 5-D, 19, 23, 26-29, and 31). At trial, Petitioner admitted ownership of the sawed-off shotgun and the marijuana plants (Tr. 4/27/12, 20-21, 41-44). When police arrived at the neighbor's house, Petitioner told police, "I shot the mother fucker. I killed him. I did it. I'm guilty" (Tr. 4/23/12, 179).

Additional facts will be referenced herein as they relate to the individual grounds for relief raised by Petitioner.

## II. Standard of Review.

Because the OCCA addressed the merits of all of Petitioner's grounds for relief, the Court reviews them in accordance with the standard of relief set forth in 28 U.S.C. § 2254(d). Section 2254(d) requires Petitioner to show that the OCCA's adjudication of his claims either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (acknowledging that "[t]he petitioner carries the burden of proof"). The focus of this statutory provision is on the reasonableness of the OCCA's decision. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was

4

unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). In other words, "[i]t is not enough that [this] court, in its independent review of the legal question, is left with a firm conviction that the [OCCA] was erroneous." What is required is a showing that the OCCA's decision is "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).

The Supreme Court has repeatedly acknowledged that Section 2254(d) "'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court,'" and that "[i]f [it] is difficult to meet, that is because it was meant to be." White v. Wheeler, 577 U.S. ___, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. ___, 134 S. Ct. 10, 16 (2013)); Harrington v. Richter, 562 U.S. 86, 102 (2011). Section 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." Richter, 562 U.S. at 102. What remains, then, is a very narrow avenue for relief, one that permits relief only "*where there is no possibility* fairminded jurists could disagree that the [OCCA's] decision conflicts with [the Supreme] Court's precedents." Id. (emphasis added).

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 102-03 (citation omitted).

## III. Analysis.

### A.    Ground One:        Motion to Sever.

In his first ground for relief, Petitioner asserts that the trial court erred when it denied his motion to sever.  As noted above, in addition to the murder charge (Count 1), Petitioner was also charged with cultivation of a controlled dangerous substance (Count 2) and possession of a sawed-off shotgun (Count 3).  Petitioner filed a motion to sever Counts 2 and 3.  The trial court granted the motion as to the cultivation charge (O.R. 103-07; Tr. 4/2/12, 10-11; Tr. 4/23/12, 4).  Because the trial court did not also sever the shotgun charge, Petitioner claims that he was denied due process.  On appeal, the OCCA found that the trial court's ruling on the motion to sever was not an abuse of discretion.  Maher, No. F-2012-597, slip op. at 3.  Applying AEDPA deference to the OCCA's decision, the Court concludes that Petitioner is not entitled to relief on Ground One.

In United States v. Lane, 474 U.S. 438, 446 n.8 (1986), the Supreme Court acknowledged that "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  See Cummings v. Sirmons, 506 F.3d 1211, 1239 (10th Cir. 2007) (quoting Lane and requiring a habeas petitioner to show the denial of a fundamentally fair trial in order to obtain relief for misjoinder); Lucero v. Kerby, 133 F.3d 1299, 1313-14 (10th Cir. 1998) (same).  "Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition

on the part of the defendant."  <u>Webber v. Scott</u>, 390 F.3d 1169, 1178 (10th Cir. 2004) (citing <u>Lucero</u>).

In support of his request for relief, Petitioner relies on the arguments he made to the OCCA.  Focusing on Oklahoma law regarding the joinder of offenses, the sum of Petitioner's argument is that the shotgun charge should have been severed because it was unconnected to the murder, i.e., the shotgun was not the weapon used to kill Mr. Wade and it was found in a shed in the backyard, not in the house where Mr. Wade was killed.  Pet'r's Br. at 10-16.  The only argument that even hints at prejudice is Petitioner's contention that the jury was not given a limiting instruction regarding its consideration of the evidence presented in support of the shotgun charge.  However, even Petitioner acknowledges that the jury was instructed to give separate consideration to the counts.  <u>Id.</u> at 11.

Regarding the two counts for which Petitioner was tried, the jury was instructed as follows:

> The defendant is charged with more than one count.  Separate consideration must be given to each count since they each constitute separate charges.  Whether a defendant is guilty or not guilty of one count should not influence you as to whether or not he is guilty or not guilty of the other count.

(O.R. 151).  Given this instruction, the Court cannot conclude that Petitioner was denied a fair trial by inclusion of the shotgun charge.  The instruction is simple and clear, and the Court can assume that the jury followed it.  <u>See Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").  In addition, this is not a situation where there was a great evidentiary disparity between the counts.  Petitioner admitted to both crimes.  His only challenge to the State's case was his claim that he killed

Mr. Wade in self-defense. Confusion of the evidence was also not an issue as the crimes were distinct. For these reasons, the Court concludes that Petitioner was not prejudiced by the joinder of offenses and the OCCA was therefore not unreasonable in its denial of relief. Petitioner's Ground One is denied.

**B.      Grounds Two, Four, and Five:   Evidentiary Challenges.**

In Grounds Two, Four, and Five, Petitioner presents challenges to the trial court's evidentiary rulings. For the following reasons, the Court finds that the OCCA was not unreasonable in denying relief on these claims.

When a petitioner challenges the admission of evidence, "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" where the admitted evidence "is so unduly prejudicial that it renders the trial fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 825 (1991). Undefined by specific legal elements, this standard obliges the court to "'tread gingerly'" and "exercise 'considerable self-restraint.'" Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990)). Relief is warranted in only "the most serious cases, which truly shock the conscience as well as the mind." Rivera, 900 F.2d at 1477 (internal quotation marks and citation omitted).

An alleged evidentiary error is not viewed in isolation, but is considered in light of the entire proceeding. As acknowledged in Rivera, "a fundamental-fairness analysis is heavily dependent upon the peculiar facts of an individual trial." Id. Thus, "inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings,

including the strength of the evidence against the defendant." <u>Hanson v. Sherrod</u>, 797 F.3d 810, 843 (10th Cir. 2015).

### Ground Two

In Ground Two, Petitioner asserts that the trial court erred when it allowed the State to present evidence of the marijuana plants, marijuana, drug paraphernalia, and numerous guns found inside the house and in the shed (with the sawed-off shotgun). Petitioner argues that this evidence was irrelevant and prejudicial. Although the trial court admitted this evidence under an exception to other crimes evidence, the OCCA found that it was improperly admitted. The OCCA nevertheless denied relief, finding that the evidence was "[a]t most" *res gestae* evidence, but that in any event, "any error was harmless beyond a reasonable doubt in light of [Petitioner's] admission to the possession of the marijuana plants and the guns and his confession to shooting the decedent." <u>Maher</u>, No. F-2012-597, slip op. at 4.

Although the OCCA applied the harmless error test set forth in <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), this Court's review is governed by "the more forgiving standard of review" set forth in <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946), and adopted in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993). <u>Fry v. Pliler</u>, 551 U.S. 112, 116, 121-22 (2007). Under <u>Kotteakos</u>, 328 U.S. at 776, the test is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." The Supreme Court elaborated on the standard as follows:

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that

substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

Id. at 765. "By 'grave doubt' [the Supreme Court] mean[s] that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." O'Neal v. McAninch, 513 U.S. 432, 435 (1995) (parentheses omitted).

The Court finds that this evidence did not have a substantial and injurious effect on the jury's verdict. As the OCCA found, Petitioner admitted possession of the evidence, but even more than that, he admitted to killing Mr. Wade. Again, the only issue at trial was whether he killed Mr. Wade in self-defense. Although the drug and gun evidence did not relate to that issue, its admission did not infuse prejudice into that determination. The real prejudice in this case was the fact that Petitioner shot an unarmed Mr. Wade twenty times. Having marijuana and guns in his possession while he carried out this act did not substantially influence the jury's verdict.

**Ground Four**

In Ground Four, Petitioner asserts that Stephens County Sheriff's Deputy Chad Powell should not have been allowed to testify that the location of the shell casings was indicative of the location of the gun when fired. Petitioner argues that the deputy did not have the expertise to give this testimony. He additionally contends that the testimony should not have been allowed because the crime scene had been corrupted.

Deputy Powell was the lead investigator in Petitioner's case (Tr. 4/26/12, 28). At the time of trial, Deputy Powell had thirteen years of law enforcement experience (id. at

10

26-27). He was also a firearms instructor with almost 200 hours of firearms training (id. at 150). Deputy Powell processed the crime scene and gave extensive testimony regarding the shell casings and bullets found in Petitioner's living room. A total of eighteen shell casings were recovered. Four were found near the fireplace, three to the left of the fireplace near the aquarium, and eleven by the front door near Mr. Wade's body. Bullets and bullet fragments were found in each area as well. One bullet, embedded in the floor underneath Mr. Wade's body, lined up with a wound on Mr. Wade's back (id. at 66-82, 98-110, 120-22, 138-46; State's Exs. 5C, 36-56A, 68, and 72-76A). Familiar with the gun used to kill Mr. Wade, Deputy Powell testified that it would have ejected the shell casings to the right (id. at 40, 162-63). Correlating this information with the three areas of shell casings found at the scene, Deputy Powell testified that the location of the shell casings was indicative of where the gun was when it was fired (id. at 163-64).

Petitioner contends that Deputy Powell did not have the expertise to give this testimony. He notes that Deputy Powell "never claimed to be trained in crime scene reconstruction or in firearm ballistics." Pet'r's Br. at 36. Petitioner also claims that Deputy Powell had no basis for his opinion since he never fired the weapon used to kill Mr. Wade and admitted that the ejection trajectory could vary and that the wood and tile floors in Petitioner's living room could have caused the casings to roll (Tr. 4/26/12, 156-57, 190-92). Pet'r's Br. at 36-37.

In denying Petitioner relief on this claim, the OCCA found that the trial court did not abuse its discretion in allowing the testimony: "As a police officer and an investigator at the crime scene, Deputy Powell was sufficiently qualified to give his opinion as to the

ejection pattern of the shell casings." Maher, No. F-2012-597, slip op. at 5-6. Petitioner has not shown that the OCCA's decision is unreasonable. Given his experience and familiarity with the weapon used to kill Mr. Wade, Deputy Powell was qualified to give testimony about its ejection pattern. It was therefore permissible for him to apply that knowledge to the evidence in the case. In addition, to the extent there were weaknesses in his testimony, like the fact that he had not fired Petitioner's gun to assess its particular ejection pattern, Petitioner was permitted to draw those out on cross-examination (Tr. 4/26/17, 190-92).

Petitioner additionally asserts that Deputy Powell's testimony should not have been allowed because there was no assurance that the crime scene was uncorrupted. Petitioner argues that if the crime scene was corrupted, then Deputy Powell could not render a valid opinion based on the location of the shell casings. Petitioner's assertion is that the location of the shell casings could have been altered by foot traffic. He notes that several people were in the living room after the murder but before the crime scene was processed, including himself, his wife, law enforcement officers, and medical personnel. Petitioner also argues that the "cylindrical, easily rolling" nature of the shell casings made them "highly susceptible to alteration." Pet'r's Br. at 43. Because Petitioner did not raise this claim to the trial court, the OCCA reviewed for plain error. The OCCA denied relief as follows:

> [Petitioner's] claim that the crime scene could have been corrupted by [Petitioner] and his wife leaving the scene and by the responding officers and medical personnel is highly speculative at best. While it is the State's responsibility to show the evidence offered is in substantially the same condition at the time of offering as when the crime was committed, it is not

necessary that all possibility of alteration be negated.  <u>Brown v. State</u>, 1998 OK CR 77, ¶ 58, 989 P.2d 913, 929 (regarding chain of custody).  If there is only speculation that tampering or alteration occurred, "it is proper to admit evidence and let what doubt there may be go to its weight rather than render the evidence completely admissible."  <u>Id.</u>  [Petitioner] fails to show the evidence of the crime scene was not substantially in the same condition at its offering as when the crime was committed.  We find no error in admitting Deputy Powell's testimony of the crime scene and thus no plain error.

<u>Maher</u>, No. F-2012-597, slip op. at 6-7.

The OCCA's decision is reasonable.  Petitioner did not object to the admission of the shell casings and his argument after the fact about alteration is speculative.  As for the nature of the casings and their ability to easily roll, Petitioner brought this information out on cross-examination (Tr. 4/26/12, 191-92).  Under these circumstances, the Court cannot conclude that the admission of Deputy Powell's testimony denied Petitioner a fundamentally fair trial.

### Ground Five

In Ground Five, Petitioner asserts that he should have been allowed to admit his wife's handwritten statement.[5]  Trial counsel used the statement on cross-examination of Mrs. Maher to show inconsistencies in her direct examination testimony.  Petitioner asserts that the statement was admissible as extrinsic evidence of impeachment.

---

[5] Although not admitted, the statement was marked as Defendant's Exhibit 3 (Tr. 4/25/12, 118-21).

In denying Petitioner relief, the OCCA found that the trial court did not abuse its discretion in denying admission of Mrs. Maher's statement. The OCCA reasoned as follows:

> If a witness admits making the prior consistent statement, it is not necessary to introduce the portion of the record relating to the inconsistent statement. Neal v. State, 1992 OK CR 58, ¶ 6, 837 P.2d 919, 920-21 citing Kelsey v. State, 1977 OK CR 300, ¶ 9, 569 P.2d 1028, 1031. See also 12 O.S.2011, § 2613(B). Here, Mrs. Maher admitted the letter contained statements inconsistent with later police interviews and her trial testimony. Her admissions served the purposes of impeachment; therefore extrinsic evidence of the prior statement was not necessary. Neal, 1992 OK CR 58, ¶ 5, 837 P.2d at 920-21 (Lumpkin, V.P.J. concurring in results).

Maher, No. F-2012-597, slip op. at 7.

Petitioner's Ground Five amounts to a challenge to the OCCA's interpretation and application of 12 Okla. Stat. § 2613(B) ("Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon."). However, this Court has no authority to re-examine questions of state law. House v. Hatch, 527 F.3d 1010, 1028 (10th Cir. 2008) ("A state court's interpretation of its own law is binding on a federal court conducting habeas review."). The only question for the Court is whether the OCCA's decision violated Petitioner's constitutional rights and rendered his trial fundamentally unfair. It did not.

Unlike Davis v. Alaska, 415 U.S. 308, 317-18 (1974), which Petitioner cites in support of his request for relief, Petitioner's questioning of Mrs. Maher was not limited. Trial counsel questioned Mrs. Maher about her handwritten statement and she admitted the inconsistent statements she made therein (Tr. 4/25/12, 95-98, 102, 108). Under these

circumstances, there was no need to admit her handwritten statement, and its absence from the admitted evidence did not prevent an effective examination. Because the jury was fully aware of the inconsistencies in Mrs. Maher's testimony, Petitioner was not denied a fundamentally fair trial by the trial court's refusal to admit her handwritten statement.

### Conclusion

For the foregoing reasons, Petitioner has not shown that he is entitled to habeas relief based on the trial court's evidentiary rulings. Accordingly, Petitioner's Grounds Two, Four, and Five are all denied.

### C.    Ground Three:    Self-Defense Instructions.

In Ground Three, Petitioner asserts that the trial court's self-defense instructions effectively undermined his right to claim the defense. The OCCA rejected this claim because it determined that Petitioner was not entitled to the instructions in the first place. Because he was not entitled to the instructions, and because the jury acquitted him of first degree murder, the OCCA found no error warranting relief. Maher, No. F-2012-597, slip op. at 5.

"A habeas petitioner who seeks to overturn his conviction based on a claim of error in the jury instructions faces a significant burden." Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002). "Unless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." Tiger v. Workman, 445 F.3d 1265, 1267 (10th Cir. 2006). See also Cummings, 506 F.3d at 1240 (citing Supreme Court authority for the proposition "that an instructional error can, under certain

circumstances, result in a violation of a defendant's right to a fair trial"). See Article III.B., supra (discussing fundamental fairness analysis).

Petitioner's complaint centers on Instruction No. 18, a modified version of OUJI-CR (2d) 8-15A addressing Oklahoma's "Stand Your Ground" law. See 21 Okla. Stat. § 1289.25. This instruction, which was given in addition to general self-defense instructions, told the jury that Petitioner had the right to stand his ground (and use deadly force) if he was not engaged in an unlawful activity (O.R. 135-41). Because Petitioner admitted to engaging in unlawful activity (possessing a sawed-off shotgun and marijuana plants), he argues that Instruction No. 18 prevented the jury from giving full consideration to his defense. Petitioner additionally asserts that the jury should have been given OUJI-CR (2d) 8-52.[6]

In denying Petitioner relief, the OCCA held as follows:

> In Proposition III, we find [Petitioner's] claim of self-defense was based solely on his self-serving statements that the decedent "charged him" and that he felt threatened. This statement, standing alone is not sufficient to support the defense of self-defense. Eizember v. State, 2007 OK CR 29, ¶ 111, 164 P.3d 208, 236 (a defendant's statements concerning the homicide are sufficient to warrant a jury instruction only if those statements are supported by other evidence presented at trial). The evidence showed that [Petitioner] was the only person armed during the confrontation with the decedent. The right of self-defense cannot be invoked by an aggressor or by one who voluntarily enters into a situation armed with a deadly weapon. Davis v. State, 2011 OK CR 29, ¶ 95, 268 P.3d 86, 115. By receiving the self-defense instructions, [Petitioner] received a benefit he was not entitled to. Any error in giving an amended version of OUJI-CR 2d 8-15A pursuant

---

[6] This instruction, which Petitioner asserts should have been given instead of Instruction No. 18, would have told the jury that "[a] person who (was not the aggressor)/(did not provoke another with intent to cause an altercation)/(did not voluntarily enter into mutual combat) has no duty to retreat, but may stand firm and use the right of self-defense."

to 21 O.S.2011, § 1289.25(D), also known as the "Stand Your Ground" law was to [Petitioner's] benefit as he was acquitted of the first degree murder charge and convicted of the lesser charge of first degree manslaughter. Similarly, the failure to give OUJI-CR 2d 8-52 ("[a] person who was not the aggressor has no duty to retreat, but may stand firm and use the right of self-defense") did not prejudice [Petitioner] as he was not entitled to the instruction.

Maher, No. F-2012-597, slip op. at 5. This is a reasonable determination.

As the OCCA found, the evidence failed to support self-defense instructions. Petitioner spent hours with Mr. Wade without incident, but according to Petitioner, he felt the need to arm himself when the unarmed Mr. Wade "began to act very strange" and "was just being weird" (Tr. 4/24/12, 170; Tr. 4/27/12, 14). According to Petitioner, he then drew his weapon in an effort to get Mr. Wade to leave and fired it when Mr. Wade charged at him (Tr. 4/27/12, 15, 18). However, under Oklahoma law, Petitioner cannot claim self-defense when he introduced the deadly weapon into the situation. Maher, No. F-2012-597, slip op. at 5. In addition, in order to support a claim of self-defense, Petitioner must present more than his own self-serving statements. Id. Mrs. Maher, the only other person present, did not see Mr. Wade charge Petitioner. In fact, she testified that she did not see Mr. Wade make any aggressive movements toward her husband (Tr. 4/24/12, 170). The most Mrs. Maher could corroborate of Petitioner's version of events was that the two men were arguing. At worst, Mrs. Maher thought they were going to have a fist fight (id. at 152, 161-63, 167-68). Under these facts, it was reasonable for the OCCA to conclude that Petitioner was not entitled to instructions on self-defense.

Beyond the evidentiary failings of Petitioner's claim, the OCCA additionally found that Petitioner was not prejudiced by any error in the self-defense instructions because the

jury acquitted him of first degree murder. This is also reasonable. The jury was instructed that Petitioner's claim of self-defense related to the first degree murder charge and that if the State failed to meet its burden of showing that Petitioner did not act in self-defense, then Petitioner must be found not guilty (O.R. 135, 137). Because the jury found Petitioner not guilty of first degree murder, Petitioner cannot show any prejudice resulting from any problems with the self-defense instructions.

For the foregoing reasons, the Court finds that Petitioner has failed to demonstrate that the OCCA's denial of relief on Ground Three is objectively unreasonable. Ground Three is therefore denied.[7]

### D.    Ground Six:        Ineffective Assistance of Trial Counsel.

In Ground Six, Petitioner claims that his trial counsel was ineffective. In particular, he asserts that counsel was ineffective with respect to the self-defense instructions and to the cross-examination of Mrs. Maher. Applying Strickland v. Washington, 466 U.S. 668 (1984), the OCCA denied relief. Maher, No. F-2012-597, slip op. at 8. Because Petitioner has failed to show that the OCCA's decision is objectively unreasonable, Ground Six must be denied.

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." Titlow, 134 S. Ct. at 18. Whether counsel has

---

[7] Petitioner's request for an evidentiary hearing on this ground is also denied. See Jones v. Warrior, 805 F.3d 1213, 1222 (10th Cir. 2015) (denying an evidentiary hearing under Pinholster because a petitioner failed to satisfy § 2254(d)); Anderson v. Att'y Gen. of Kan., 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.").

provided constitutional assistance is a question to be reviewed under the familiar standard set forth in <u>Strickland</u>. <u>Strickland</u> requires a defendant to show not only that his counsel performed deficiently, but that he was prejudiced by it. <u>Strickland</u>, 466 U.S. at 687.

To satisfy the deficient performance prong, a defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Id.</u> The assessment of counsel's conduct is "highly deferential," and a defendant must overcome the strong presumption that counsel's actions constituted "'sound trial strategy.'" <u>Id.</u> at 689 (citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." <u>Id.</u> at 690. As <u>Strickland</u> cautions, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689. Therefore, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> Within "the wide range of reasonable professional assistance," "[t]here are countless ways to provide effective assistance in any given case[, and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u>

As for prejudice, <u>Strickland</u> requires a defendant to show that his counsel's errors and omissions resulted in actual prejudice to him. <u>Id.</u> at 687. In order to make a threshold showing of actual prejudice, a defendant "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In denying Petitioner relief, the OCCA held as follows:

> In Proposition VI, having reviewed the allegations of ineffectiveness raised by [Petitioner], and considering counsel's challenged conduct on the facts of the case as viewed at the time of trial, we find [Petitioner] has failed to meet his burden of showing a reasonable probability or that it is reasonably likely that, but for any unprofessional errors by counsel, the result of the trial would have been different as any errors or omissions by counsel did not influence the jury's determination of guilt or sentence. Mitchell v. State, 2011 OK CR 26, ¶ 150, 270 P.3d 160, 191 citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

> In Proposition III we addressed the sufficiency of the self-defense instructions and found that any error in the instructions was to [Petitioner's] benefit. Therefore, [Petitioner] cannot claim that any perceived omissions by counsel prejudiced him and denied him a fair trial.

> Further, we have found defense counsel thoroughly cross-examined Ruthann Maher on the inconsistencies between her various statements to police and her testimony on direct examination. [Petitioner's] arguments on appeal are "nothing more than complaints about exactly how that impeachment should have been accomplished." Jones v. State, 2006 OK CR 5, ¶ 83, 128 P.3d 521, 546-547. "The fact that counsel did not ask every question [[Petitioner]] is now able to formulate on appeal is not proof of deficient performance." Id.

Maher, No. F-2012-597, slip op. at 8. This determination that Petitioner's counsel was not ineffective is entitled to AEDPA deference, and as the Supreme Court has held, when the limits imposed by the AEDPA intersect with the deference afforded counsel under Strickland, Petitioner faces a significant hurdle to relief.

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland

standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so[.] The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 562 U.S. at 105 (internal quotation marks and citations omitted).

Regarding the self-defense instructions, it was reasonable for the OCCA to rely on its analysis of Petitioner's instruction claim to deny relief. Because the OCCA found that Petitioner was not entitled to self-defense instructions and that he was also not prejudiced by any error in the instructions given that the jury acquitted him of first degree murder, see Ground Three, supra, no prejudice exists to support a finding of trial counsel ineffectiveness.

As for Mrs. Maher, the OCCA correctly noted that counsel conducted a thorough cross-examination of her. Counsel questioned Mrs. Maher about her plea deal and he brought out inconsistencies between her trial testimony and prior statements. Counsel

emphasized how Mrs. Maher had been inconsistent about where she first saw Mr. Wade. Although she testified at trial that she first saw Mr. Wade on the loveseat, she had previously stated that Mr. Wade was on the front porch when she first saw him. Mrs. Maher admitted this inconsistency, explaining that the shock of the event affected her ability to recall all the details (Tr. 4/24/12, 153; Tr. 4/25/12, 97, 99, 103-04, 108). Counsel also used Mrs. Maher's prior statements to bring out evidence of the heated exchange between Petitioner and Mr. Wade, the name-calling, and how Mr. Wade was acting "like a crazy man" (Tr. 4/25/12, 97, 99, 102, 105-06).[8] Finally, counsel was able to elicit testimony from Mrs. Maher that Petitioner felt threatened and that she, too, considered Mr. Wade to be a threat (id. at 99, 106-07, 112-16).

Nevertheless, Petitioner contends that counsel could have done more. According to Petitioner,

> [t]he problem with counsel's cross-examination of Ruthann Maher was that it allowed her to succeed in subtly but decisively changing her story in such a way that she transformed [Petitioner] from being a person whose actions were at least understandable into an unsympathetic violent drunk who shot a man over insults.

Pet'r's Br. at 55. With reference to her handwritten statement, Petitioner then suggests four areas in which counsel could have further impeached Mrs. Maher.

"[C]ounsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy," Richie v. Mullin, 417 F.3d 1117, 1124 (10th

---

[8] Mrs. Maher also admitted on redirect examination that Mr. Wade's hand gestures "could have been taken as a threat" (Tr. 4/25/12, 123).

Cir. 2005), and Petitioner has not overcome this presumption to show deficient performance. As the OCCA found, it is not enough to argue that counsel could have accomplished more. Counsel not only impeached Mrs. Maher, but he elicited other helpful testimony from her as well. To argue that counsel could have impeached her in additional ways is to engage in the hindsight <u>Strickland</u> cautions against. There is also a lack of prejudice. Even if counsel had questioned Mrs. Maher as Petitioner suggests, Petitioner has not shown a reasonable probability that the result of the proceeding would have been different. Petitioner's contention that further impeachment of Mrs. Maher would have made his actions more understandable to the jury is tenuous at best and far short of showing that the OCCA's decision denying him relief on this claim was objectively unreasonable.

Ground Six is denied.

**E.     Ground Seven:     Cumulative Error.**

In his final ground, Petitioner seeks relief based upon a cumulative error theory. "A cumulative-error analysis . . . aggregates all the errors that individually have been found to be harmless . . . and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Rivera</u>, 900 F.2d at 1470. A petitioner has no basis for cumulative error relief in the absence of two or more errors. <u>Hanson</u>, 797 F.3d at 852. With respect to Ground Two, the OCCA found harmless error in the trial court's admission of other crimes evidence. No other error was found by the OCCA or by this Court. Accordingly, Petitioner's Ground Seven is denied.

## IV. Conclusion.

Having concluded that Petitioner's arguments do not establish a right to relief, his petition for writ of habeas corpus is **DENIED**, as is his request for an evidentiary hearing (Dkt. Nos. 11 and 21). A certificate of appealability is also **DENIED**. Judgment will enter accordingly.

IT IS SO ORDERED this 12th day of December, 2017.

ROBIN J. CAUTHRON
United States District Judge